IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Priscilla D. Legette, | ) | C/A No.: 1:12-3070-JMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a

Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a)

(D.S.C.).  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to

obtain judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").[2]  The two

issues before the court are whether the Commissioner's findings of fact are supported by

substantial evidence and whether she applied the proper legal standards.  For the reasons

that follow, the undersigned recommends that the Commissioner's decision be reversed

and remanded for further proceedings as set forth herein.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February
14, 2013.  Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for
Commissioner Michael J. Astrue as the defendant in this lawsuit.
[2] Plaintiff also applied for, and was ultimately approved for, Supplemental Security
Income ("SSI") based on a finding of disability beginning in August 2009.  Tr. at 118.

I.     Relevant Background

    A.     Procedural History

On August 15, 2008, Plaintiff filed an application for DIB in which she alleged her disability began on January 2, 2002.  Tr. at 183.  Her application was denied initially and upon reconsideration.  Tr. at 85, 89.  On March 23, 2011, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Regina L. Warren.  Tr. at 48–84 (Hr'g Tr.).  The ALJ issued an unfavorable decision on April 15, 2011, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 30–41.  Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  Tr. at 1–3.  Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on October 24, 2012.  [Entry #1].

    B.     Plaintiff's Background and Medical History

        1.     Background

Plaintiff was 58 years old at the time of the hearing.  Tr. at 80.  She discontinued her education in ninth grade.  Tr. at 272.  Her past relevant work ("PRW") was as a secretary.  Tr. at 74.  She alleges she has been unable to work since January 2, 2002.  Tr. at 183.

2.    Medical History[3]

a.    Back Pain

Plaintiff began treatment with Donald Johnson, M.D., of Southeastern Spine Institute on August 18, 2003. Tr. at 332. She complained of severe low back pain radiating into her left leg, stated that the pain began after her bladder surgery, and reported taking three Percocet per day. *Id.* Dr. Johnson reviewed an MRI taken on June 4, 2003 (Tr. at 379), and noted that it demonstrated mild degenerative spondylolisthesis at L4–5 and significant disc protrusion with a moderate to severe stenosis. Tr. at 332.

Plaintiff subsequently received three spinal injections in August and September 2003. Tr. at 322, 325, 328. However, she reported relief for only a couple of weeks following the injections and, by October 27, 2003, stated that the pain was as bad as it was prior to the injections. Tr. at 334. Dr. Johnson recommended surgical intervention. *Id.* Plaintiff underwent spinal fusion surgery on November 18, 2003, at East Cooper Regional Medical Center. Tr. at 313–16. Postoperatively, she did very well and progressed through her therapy prior to discharge without any particular difficulties. Tr. at 313.

b.    Urinary Incontinence

On April 7, 2003, Plaintiff was diagnosed with stress urinary incontinence. Tr. at 366. On April 8, 2003, Nelson Ploch, M.D., of Palmetto Adult and Children's Urology performed an anterior and posterior colporrhaphy with a fascial sling to help alleviate her

---

[3] Because Plaintiff was last insured for DIB benefits on September 30, 2006, the summary of her medical history focuses primarily on the records prior to that date.

symptoms. Tr. at 389–92. On June 9, 2003, Plaintiff returned to Dr. Ploch complaining of the onset of urgency and urge incontinence with increased nocturia. Tr. at 509. On September 20, 2006, Plaintiff returned to Dr. Ploch complaining of bladder leaks and difficulty voiding. Tr. at 503. Dr. Ploch noted that Plaintiff's 2003 surgery had been successful, but diagnosed new urethritis, new hematuria, new stress urinary incontinence, and new urge incontinence. Tr. at 504. He prescribed doxycycline. *Id.* Dr. Ploch's records indicate that Plaintiff returned to him again in January and February 2009 and was diagnosed with a recurrence of urethritis. Tr. at 505–08.

c.     Rheumatoid Arthritis and Fibromyalgia

Records show that Plaintiff was treated by Gregory Niemer, M.D., of Low Country Rheumatology as early as February 21, 2002, and was diagnosed with rheumatoid arthritis.[4] Tr. at 442. Thereafter, Plaintiff saw Dr. Niemer approximately every month or two months through her date last insured ("DLI"). Tr. at 408–41. Plaintiff repeatedly complained of pain and swelling in her knees and feet (Tr. at 416–17, 420, 422, 424–25, 428–29, 434–35, 440–41); pain in her hands and shoulders (Tr. at 415, 422–23, 428–29, 436, 440); and poor energy (Tr. at 415, 420–21, 424, 426–27, 429). Dr. Niemer regularly indicated that Plaintiff's rheumatoid arthritis was still active (Tr. at 425–27, 433, 438, 440) and frequently noted 14 to 18 tender points out of 18 (Tr. at 418, 420–21, 424, 426–27, 429). Plaintiff continued to be treated by Dr. Niemer after her DLI. Tr. at 408–15.

---

[4] Dr. Niemer's treatment notes are largely illegible.

4

d.    Opinion Evidence

On January 1, 2009, state-agency consultant Jim Liao, M.D., completed a physical residual functional capacity ("RFC") assessment regarding Plaintiff.  Tr. at 467–74.  He opined that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; stand and/or walk at least two hours in an eight-hour workday; sit about six hours in an eight-hour workday; never balance; occasionally climb, stoop, kneel, crouch, and crawl; and must avoid all exposure to hazards.  Tr. at 468–71.  Katrina B. Doig, M.D., completed a physical RFC assessment on January 21, 2010, and agreed with Dr. Liao's findings.  Tr. at 597–604.

State-agency consultant Camilla Tezza, Ph.D., completed a psychiatric review technique ("PRT") regarding Plaintiff on January 15, 2009.  Tr. at 489–502.  She noted that Plaintiff's primary care provider had documented increased stress and depression on August 17, 2007, but that there was no other mention of this in the provider's notes.  Tr. at 492.  Dr. Tezza opined that Plaintiff had mild difficulties in maintaining concentration, persistence, or pace, but no other limitations.  Tr. at 499.  In a PRT completed on January 22, 2010, Olin Hamrick Jr., Ph.D., opined that Plaintiff's depression became severe on August 1, 2009, and that there was no evidence demonstrating a severe impairment prior to that time.  Tr. at 613–26.

In November 2010, Dr. Niemer completed a medical statement regarding in which he noted Plaintiff's diagnosis as 714.0 (rheumatoid arthritis).  Tr. at 631 (*see also* http://www.icd9data.com/2013/Volume1/710-739/710-719/714/714.0.htm).  He further noted that Plaintiff had a history of joint pain, swelling, morning stiffness, sleep

5

disturbance, inability to ambulate effectively, inability to walk a block, inability to perform fine and gross movements, and inflammation in both hands, both wrists, both knees, both ankles, and both feet. Tr. at 631–32. It was also noted that Plaintiff was having significant problems with fatigue and malaise. Tr. at 632. Dr. Niemer opined that Plaintiff had marked limitations of activities of daily living, marked limitations in maintaining social functioning, marked ability to complete tasks, an inability to stand more than 15 minutes at a time, and an inability to sit for more than 30 minutes at a time. Tr. at 632–33. He further opined that Plaintiff could lift 10 pounds on an occasional basis and lift no more than 5 pounds on a frequent basis; she would not be able to bend or stoop; and could work no more than four hours per day. Tr. at 633. Dr. Niemer stated that these limitations have been in place since 2003. Tr. at 634.

C.    The Administrative Proceedings

1.    The Administrative Hearing

a.    Plaintiff's Testimony

At the hearing on March 23, 2011, Plaintiff testified that her PRW was that of a secretary and the last time she worked consistently was in 2002. Tr. at 54. She testified to receiving steroid joint injections for pain in her arms, back, knees, and finger. Tr. at 55. She stated that the injections gave her temporary relief. Tr. at 55–56. Plaintiff also testified to having back surgery that provided good relief initially; however, she stated that her pain had returned and requires injections. Tr. at 56. She said that she had surgery for incontinence that provided relief for only about two months. Tr. at 55–56.

6

Plaintiff testified to being treated by Dr. Niemer for 10 to 12 years for rheumatoid arthritis, fibromyalgia, osteoarthritis, and back pain. Tr. at 61. She stated that from 2002 to 2006, she experienced pain in her shoulders, arms, back, knees, feet, and neck. *Id.* Plaintiff also testified that she cannot pick things up, reach out, or lift above her head. Tr. at 61–62. She stated that she has had problems with her knees for the past 20 years, but that those problems began affecting her at work over the prior six to seven years. Tr. at 64. She said that she has been taking Percocet every day since her back surgery in 2003. Tr. at 65. Plaintiff testified that she attends church at least every other Sunday, but is unable to sit for the entire service because of the arthritis in her groin. Tr. at 66–67. She said she uses a cane all of the time and that her husband cooks, grocery shops, and does the laundry. Tr. at 67, 70–71. She stated that she watches television eight or nine hours per day, talks to her friends and family on the telephone, and dusts the house. Tr. at 71–72.

b.      Vocational Expert Testimony

Vocational Expert ("VE") Feryal Jubran reviewed the record and testified at the hearing. Tr. at 74. The VE categorized Plaintiff's PRW as a secretary as skilled, sedentary work. *Id.* The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform light work; occasionally use the bilateral upper extremities and bilateral lower extremities for pushing and pulling; occasionally reach overhead; occasionally climb stairs; never climb ladders or crawl; frequently balance and stoop; occasionally kneel, crouch; and avoid exposure to moving machinery and unprotected heights. Tr. at 76. The VE testified that the hypothetical individual could

perform Plaintiff's PRW as a secretary. *Id.* The VE stated that in light of Plaintiff's

transferable skills, she would also be able to perform the jobs of customer service clerk,

sales attendant, and general office worker. Tr. at 80.

The ALJ then limited the hypothetical individual to sedentary work with

occasional bilateral upper and lower extremity pushing and pulling; occasional bilateral

overhead reaching, gross handling, and fine fingering; occasional climbing of stairs,

stooping, kneeling, and crouching; no crawling or climbing of ladders; frequent balancing

with an assistive device; and no exposure to moving machinery or unprotected heights.

Tr. at 77. The ALJ noted that the hypothetical individual might have difficulty attending

to complex tasks, but could attend to and complete simple tasks for at least two hours at a

time without special supervision; accept supervision; work with the general public; get

along with others; make work-related decisions; and avoid workplace hazards. *Id.* The

VE stated that the hypothetical individual could not perform Plaintiff's PRW, but could

perform the jobs of inspector, assembler, and surveillance systems monitor. Tr. at 77–78.

### 2. The ALJ's Findings

In her decision dated April 15, 2011, the ALJ made the following findings of fact

and conclusions of law:

1.  The claimant last met the insured status requirements of the Social Security Act on September 30, 2006.
2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 2, 2002 through her date last insured of September 30, 2006 (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
3.  Through the date last insured, the claimant had the following severe impairments: rheumatoid arthritis, fibromyalgia, and lumbar degenerative disc disease (20 CFR 404.1520(c)).

8

4.     Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, the claimant could lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours each in an 8-hour workday.  However, she could only occasionally use the bilateral upper extremities and bilateral lower extremities for pushing and pulling. She could occasionally climb stairs but could not climb ladders.  She could frequently balance and stoop and could occasionally kneel, crouch and reach overhead.  The claimant could not crawl.  She had to avoid exposure to moving machinery and unprotected heights.

6.     Through the date last insured, the claimant was capable of performing past relevant work as a secretary.  This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.     The claimant was not under a disability, as defined in the Social Security Act, at any time from January 2, 2002, the alleged onset date, through September 30, 2006, the date last insured (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 32–41.

II.     Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)     the ALJ erred in discounting the opinions of Plaintiff's treating physicians;

2)     the ALJ's failure to accept the treating physicians' opinions resulted in an unsupported RFC and an erroneous hypothetical to the VE.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in her decision.

9

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[5] (4) whether such

---

[5] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493

impairment prevents claimant from performing PRW;[6] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b), Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls*

---

U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[6] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520(h), 416.920(h).

*v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).   If the Commissioner satisfies that

burden, the claimant must then establish that she is unable to perform other work.  *Hall v.*

*Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S.

137, 146 n.5 (1987) (regarding burdens of proof).

>            2.       The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the

Commissioner [] made after a hearing to which he was a party."   42 U.S.C. § 405(g).

The scope of that federal court review is narrowly-tailored to determine whether the

findings of the Commissioner are supported by substantial evidence and whether the

Commissioner applied the proper legal standard in evaluating the claimant's case.  *See*

*Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v.*

*Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in

the evidence."  *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v.*

*Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345

(4th Cir. 1986)).   Rather, the court must uphold the Commissioner's decision if it is

supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402

U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).   Thus, the

court must carefully scrutinize the entire record to assure there is a sound foundation for

the Commissioner's findings and that her conclusion is rational.  *See Vitek*, 438 F.2d at

1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is

substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision."  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

Plaintiff's allegations of error turn on whether the ALJ properly evaluated the opinion of Dr. Niemer and the treatment notes of Dr. Ploch.  Plaintiff contends that the ALJ erred in discounting Dr. Niemer's opinion and in according little weight to Dr. Ploch's treatment notes.  [Entry #18 at 6–9].  The Commissioner responds that the ALJ provided good reasons for her treatment of these records.  [Entry #21 at 5–11].

If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it will be given controlling weight.  SSR 96-2p; *see also* 20 C.F.R. § 404.1527(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence).  The Commissioner typically accords greater weight to the opinion of a claimant's treating medical sources because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  *See* 20 C.F.R. § 404.1527(c)(2).  However, "the rule does not require that the testimony be given controlling weight."  *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam).  Rather, "[c]ourts evaluate and

weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654.  The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence."  *Mastro v. Apfel*, 270 F.3d, 171, 176 (4th Cir. 2001).  In undertaking review of the ALJ's treatment of a claimant's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence, because its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  *Craig*, 76 F.3d at 589.

### 1.    Dr. Niemer

Plaintiff saw Dr. Niemer for rheumatoid arthritis every month or two months throughout the relevant time period.  In November 2010, Dr. Niemer completed a retrospective medical statement noting that Plaintiff had a history of joint pain, swelling, morning stiffness, sleep disturbance, inability to ambulate effectively, inability to walk a block, inability to perform fine and gross movements, and inflammation in both hands, both wrists, both knees, both ankles, and both feet.  Tr. at 631–32.  He also noted that Plaintiff was having significant problems with fatigue and malaise.  Tr. at 632.  Dr. Niemer opined that Plaintiff had marked limitations of activities of daily living, marked limitations in maintaining social functioning, marked ability to complete tasks, an inability to stand more than 15 minutes at a time, and an inability to sit for more than 30

14

minutes at a time. Tr. at 632–33. He further opined that Plaintiff could lift 10 pounds on an occasional basis and lift no more than 5 pounds on a frequent basis; she would not be able to bend or stoop; and could work no more than four hours per day. Tr. at 633. Dr. Niemer stated that these limitations have been in place since 2003. Tr. at 634.

The ALJ accorded Dr. Niemer's opinions some weight with regard to limitations associated with stooping, kneeling, crouching, pushing/pulling, and reaching overhead. Tr. at 39. However, the ALJ found that the opinions were generally inconsistent with the relevant medical evidence through the DLI and noted that there were no specific physical limitations or abnormalities documented in Dr. Niemer's treatment notes through the DLI. *Id.* The ALJ also stated that other than a general diagnosis of rheumatoid arthritis, the record contained no specific, objective clinical findings through Plaintiff's DLI to indicate that she had limitations in her ability to perform fine and gross manipulations. *Id.* The ALJ stated that Dr. Niemer's June 2003 and June 2006 treatment notes reflected that Plaintiff's rheumatoid arthritis was stable, but also recognized that other notes reflected that Plaintiff's rheumatoid arthritis and fibromyalgia remained active and that she exhibited 14–18 tender points. Tr. at 37. The ALJ discounted these notes because "there is no indication that the claimant's treating physician restricted the claimant's physical activities." *Id.*

In response to Plaintiff's allegation that the ALJ erred in discounting Dr. Niemer's opinions, the Commissioner contends that the ALJ properly weighed the opinions and provided two main reasons for discounting them. [Entry #21 at 5–7]. First, the ALJ noted that there were no physical limitations documented in the treatment notes through

15

Plaintiff's DLI. *Id.* at 6. Relying on the Second Circuit Court of Appeals' decision in *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983), the Commissioner asserts that she is entitled to rely on what the record says, but also what it does not say. [Entry #21 at 6]. However, it is unclear what types of physical limitations the ALJ is referencing. Functional limitations of the type in Dr. Niemer's opinion are rarely included in treatment notes. Furthermore, Dr. Niemer's notes document Plaintiff's repeated complaints of pain in her knees, feet, hands, and shoulders. *See* Tr. at 415–17, 420, 422–25, 428–29, 434–36, 440–41. Dr. Niemer's notes also document his regular findings of 14 to 18 tender points. Tr. at 418, 420–21, 424, 426–27, 429. Thus, the undersigned does not find an undefined lack of "physical limitations" in the record to be a sound basis for discounting Dr. Niemer's opinions.

The other reason offered by the ALJ for discounting Dr. Niemer's opinions is that the opinions were "generally inconsistent with the relevant evidence through the date last insured." Tr. at 39. In support of this finding, the ALJ noted that records from June 2003 and June 2006 indicate that Plaintiff's rheumatoid arthritis was stable with medications. Tr. at 37. The ALJ recognized that intervening records reflect that Plaintiff's rheumatoid arthritis and fibromyalgia remained active and that she exhibited 14 to 18 tender points, but stated that there was no indication that Dr. Niemer restricted Plaintiff's activities. *Id.* The ALJ's reliance on two records documenting that Plaintiff's rheumatoid arthritis was stable when juxtaposed against the many other records noting active rheumatoid arthritis and many tender points appears to be unreasonable.

16

The Commissioner contends that the ALJ's references to a January 2008 consultative examination also support the ALJ's finding that Dr. Niemer's opinions were generally inconsistent with the relevant medical evidence through the DLI.  [Entry #21 at 7].  However, the ALJ herself noted that the January 2008 record post-dated the relevant time period and, thus, found the findings contained within the record to be "only marginally relevant to the instant decision as they are chronologically distant from the claimant's date last insured."  Tr. at 38.  The same is true of the foot x-rays from November 2009 that the Commissioner cited in support of the ALJ's decision to discount Dr. Niemer's opinions.  *See* Tr. at 37 (finding the x-rays to be only marginally relevant). Therefore, the medical records cited by the Commissioner in support of the ALJ's finding regarding Dr. Niemer's opinion carry little weight.

For the foregoing reasons, the undersigned recommends a finding that the ALJ's decision to discount Dr. Niemer's opinions is not supported by substantial evidence.  The undersigned further recommends that, on remand, the ALJ be directed to evaluate Dr. Niemer's opinions in accordance with 20 C.F.R. § 404.1527(c)(2).

2.    Dr. Ploch

Plaintiff also contends that the ALJ erred in giving little weight to Dr. Ploch's notes from September 20, 2006, in which the doctor indicated that Plaintiff still had problems with stress and urge incontinence with moderate difficulties voiding and that she still carried a diagnosis of stress urinary incontinence.  [Entry #18 at 8–9].  The ALJ found that Plaintiff's stress urinary incontinence was a non-severe impairment.  Tr. at 33. In so finding, the ALJ noted that Plaintiff underwent surgery related to the condition in

17

April 2003 and, although she initially reported urgency and urge incontinence in June 2003, there is no indication that she reported the problem again until September 20, 2006, ten days prior to her DLI.  *Id.*  The undersigned recommends a finding that it was reasonable for the ALJ to give little weight to Dr. Ploch's treatment notes in light of the three-year gap in treatment records related to this condition.  *See Lawrence v. Astrue*, 8:07-3215, 2008 WL 5378235, at \*11 (D.S.C. Dec. 19, 2008).

### 3.    Remaining Allegations of Error

Finally, Plaintiff contends that the ALJ's failure to accept the treating physicians' opinions resulted in an unsupported RFC and an erroneous hypothetical to the VE. [Entry #18 at 5–6, 9–10].  Because the undersigned recommends a finding that the ALJ did not properly evaluate Dr. Niemer's opinions, the undersigned further recommends a finding that the ALJ's RFC determination and hypothetical to the VE are not supported by substantial evidence.

## III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law.  Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence.  Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

November 25, 2013                              Shiva V. Hodges
Columbia, South Carolina                      United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).